**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

   CHAMBERS OF                                             MITCHELL H. COHEN COURTHOUSE
**JOEL SCHNEIDER**                               1 John F. Gerry Plaza, Room 2060
*UNITED STATES MAGISTRATE JUDGE*                CAMDEN, NJ 08101-0887
                                                            *(856) 757-5446*

**LETTER OPINION**
**ELECTRONICALLY FILED**
January 11, 2011

Charles A. Ercole, Esq.
Klehr, Harrison, Harvey,
 Branzburg & Ellers, LLP
457 Haddonfield Road
Suite 510
Cherry Hill, NJ 08002-6603

John M. Nolan, Esquire
Jackson Lewis
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960

        **Re: Dubler v. Hangsterfer's Laboratories, et al.**
             **Civil No. 09-5144 (RBK/JS)**

Dear Counsel:

    This Letter Order addresses defendant's request for a protective order regarding two e-mails it claims are privileged and/or protected by the work-product doctrine.[1] Defendant seeks to bar plaintiff from using or referring to the e-mails. Plaintiff alleges defendant waived its privilege that applied to the e-mails dated February 11 (D-2) and 12 (D-3), 2008. The February 11 e-mail was sent by Betsy Ramos, Esquire to Beth Jones (a/k/a Sheehan) with copies to various individuals employed by Hangsterfer's. The February 12 e-mail was sent by Beth Sheehan to Betsy Ramos. The Court received the parties' pre and post hearing briefs and held a hearing on this issue on November 19, 2010. The Court also held a second oral argument on January 10, 2011.

    This Letter Order addresses two issues. One, did Hangsterfer's waive its privilege when Beth Sheehan gave copies of the e-mails to plaintiff in February 2008. Second, did Hangsterfer's waive its privilege when it produced other privileged documents to plaintiff on October 15, 2010. For the reasons to be discussed, the Court finds that Hangsterfer's did

---

1. Unless otherwise stated references to "privilege" will also include work-product protection.

January 11, 2011
Page 2

not waive its privilege when L. Jones gave the e-mails to plaintiff in February 2008. However, the Court finds that Hangsterfer's waived its privilege when it produced privileged documents to plaintiff in October 2008. Therefore, defendant's application for a protective order is DENIED and plaintiff may use and refer to the February 2008 e-mails during discovery. This Letter Order does not address the use or admissibility of the e-mails at trial.

Background

By way of background, when the February 2008 e-mails were prepared Fuchs had already sued Nancy Hudak, an employee of Hangsterfer's. Fuchs alleged that Hudak formerly worked for it and that she gave Hangsterfer's its confidential trade secret information regarding the Neosol product. In this litigation plaintiff alleges he was fired because he complained that Hangsterfer's employee, Chris Sheehan, also a former employee of Fuchs, stole Fuchs' confidential information and was using it while employed at Hangsterfer's. At the time Chris Sheehan was married to Beth Sheehan, Hangsterfer's vice president. The e-mails in question were prepared shortly before L. Jones and Hangsterfer's counsel traveled to Chicago to meet with Fuchs about the Hudak litigation.

At the time the e-mails were prepared L. Jones was defendant's President and plaintiff was its Director of Sales. L. Jones considered plaintiff part of defendant's management team (Transcript ("Tr.") 18:23 to 19:3). Although L. Jones does not specifically recall giving the e-mails to plaintiff, she recalls she had a lot of discussions with plaintiff before she went to Chicago to meet with Fuchs about the Hudak litigation (Tr. 21:8-25). She had these discussions because plaintiff was a trusted employee and as the Director of Sales he dealt with Neosol issues on a daily basis. (Tr. 22:3-9). Before L. Jones resigned in August 2009, she did not know plaintiff would be fired. (Tr. 22:15-17). She also never authorized plaintiff to use the e-mails against Hangsterfer's. (Tr. 22:21-23).

Shortly after Chris Sheehan was hired in May 2006 plaintiff became concerned that Sheehan was stealing Fuchs' confidential information for use by Hangsterfer's. (Tr. 45:2-20). In June 2007, plaintiff raised the issue with Beth Sheehan who became angry. (Tr. 45:21-25; 46:3-12). Plaintiff raised the issue again at a meeting in November 2007. (Tr. 46:17-25). Plaintiff alleges he was not part of the Hudak litigation team. (Tr. 47:16-17). Plaintiff testified that L. Jones gave him the e-mails at issue on February 12, 2008 and said "you were right." However, plaintiff does not know why L. Jones gave him the e-mails. (Tr.

53:2-6).  L. Jones never told plaintiff she wanted him to have the e-mails as leverage against the company.  (Tr. 58:19-22). Plaintiff was fired on August 3, 2009, approximately 1½ years after he received the e-mails.  After February 2008, but before he was fired, plaintiff was promoted from Sales Manager to General Manager.

Plaintiff argues defendant waived the attorney client privilege and work-product protection when L. Jones gave the two e-mails to him in February 2008.  This argument rests on plaintiff's contention that in February 2008 he was "frozen out" of the Hudak litigation. (Tr. 57:8-9).  Plaintiff also contends he was not given the e-mails because defendant wanted to consult with him about the Hudak litigation.  Defendant argues there was no waiver because plaintiff was part of its management and the receipt of a privileged document by a management person does not waive a privilege.

Plaintiff also argues defendant waived its privilege when it produced in discovery related privileged documents on October 15, 2010.  The documents are attached as Exhibit 1 to plaintiff's Supplemental Brief, Doc. No. 59.  These documents consist of copies of e-mails exchanged from October 29, 2007 to November 21, 2008 between members of defendant's management (Beth Sheehan, Bill Jones, Chris Sheehan, Pat Brewer, Andrew Dubler, Leslie Jones). The documents also include e-mails authored by and sent to defendant's counsel, Betsy Ramos, and another lawyer from the Capehart firm.

The parties do not contest that the subject e-mails are protected by the attorney-client privilege and/or the work product doctrine.  Instead, the parties dispute whether Hangsterfer's waived its privilege.  The relevant legal issues will be discussed in the order in which they were presented to the Court.

Attorney-Client Privilege

In general, the attorney-client privilege is waived when privileged information is disclosed to a person outside of the attorney-client relationship. Westinghouse Elec. Corp. v. Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991). The act of disclosing privileged information to a third-party indicates that the client did not intend to keep the communication secret. In re Teleglobe Communications Corp., et al. v. BCE, Inc., et al., 493 F.3d 345, 361 (3rd Cir. 2007). A disclosure to a third-party waives the attorney-client privilege even if the third-party agrees not to disclose the information to anyone else. Westinghouse, 951 F.2d at 1427.

The Court finds that defendant did not waive the attorney-client privilege when L. Jones gave copies of the subject e-mails

January 11, 2011
Page 4

to plaintiff in February 2008.  When plaintiff received the e-mails he was the company's Director of Sales and was part of its management team.  Giving a privileged e-mail to a member of a company's management team does not result in the waiver of a privilege. Cf. Barr v. Harrah's Entertainment, Inc., No. 05-5056 (JEI), 2008 WL 906351, at *6 (D.N.J. March 31, 2008)("a former officer or director who is permitted a right of access to a corporation's documents [has] ... an obligation to maintain the confidentiality of any privileged information that he might review, because the corporation's attorney-client privilege belongs to the corporation and cannot be waived by the former officer or director").

Plaintiff argues Hangsterfer's waived its privilege because the subject e-mails concerned the Hudak litigation and he was "frozen out" of discussions regarding the litigation.  The Court does not accept plaintiff's argument.  While no evidence has been presented that plaintiff was sent a copy of the February 2008 e-mails, this does not necessarily result in a finding that plaintiff was "frozen out" from the Hudak litigation.  To the contrary, plaintiff's argument is contradicted by L. Jones who testified she discussed the litigation with plaintiff.

> ... I had a lot of discussions with Andrew when I had to go off to Chicago at the end of February.  So, there's no doubt that I printed them [e-mails] in February and we discussed them leading up to the case.

Tr. at 21:10-14.  See also id. at 21:23:25.  The Court finds L. Jones' testimony on this issue credible.  L. Jones' discussions with plaintiff were not surprising since plaintiff "was a trusted employee at the time." Id. at 22:3.  Plaintiff's argument is also contradicted by the series of e-mails Hangsterfer's produced with its Supplemental Brief. [Doc. No. 59].  Plaintiff was sent copies of numerous e-mails regarding the dispute with Fuchs which belies his argument that he was excluded from discussions regarding the dispute.

The Court finds that L. Jones gave the e-mails to plaintiff for a legitimate business purpose, i.e., to keep plaintiff updated and "in the loop" regarding the ongoing Hudak negotiations and litigation.  The Court therefore rejects plaintiff's argument that L. Jones' sole purpose in giving him the e-mails was to "validat[e] his belief that Christopher Sheehan stole what led to the Neosol formula from Fuchs Laboratories." Brief at 1, Doc. No. 59.  Even assuming for present purposes that plaintiff's testimony is accurate (Tr. 50:22-51:11), this is simply plaintiff's interpretation of L. Jones' motivation.  The Court credits L. Jones' testimony that she gave the e-mails to plaintiff for a business purpose.  It may be true that on February 12, 2008, the

precise date for the February 2008 meeting with Fuchs was not locked in.  However, it is likely Hangsterfer's management knew by February 12 that a meeting would soon be scheduled.  Importantly, there is no evidence to support an argument that L. Jones gave plaintiff the e-mails to "protect himself" or as "leverage" against defendants.  Id. at 22:21-23; 66:9-15.

Although not raised by plaintiff, the Court also declines to order the production of the e-mails pursuant to In re Kozlov, 79 N.J. 232 (1979).  Pursuant to Kozlov a privileged document should be produced if: (1) there is a legitimate need by the requesting party for the evidence sought to be shielded, (2) the document is relevant and material to the issues before the court, and (3) the requested information could not be secured from a less intrusive source.  Id. at 243-44.  The Court finds that the information plaintiff is seeking is available from a less intrusive source than the requested e-mails.  Plaintiff will be deposing relevant witnesses and is likely to address with them relevant and discoverable facts regarding the Hudak litigation.

Work-Product Doctrine

The waiver of the work-product doctrine is different than the waiver of the attorney-client privilege.  "The predicate of the waiver inquiry in the work-product context is not, as it is in the attorney-client context, whether the material was disclosed, but whether the material was disclosed to an adversary."  Maldonado v. New Jersey ex. rel. Administrative Office of Courts-Probation Division, 225 F.R.D. 120, 131 (D.N.J. 2004).  The essential question with respect to waiver of work-product is whether the material has been kept away from adversaries.  Id.  The party alleging that a waiver occurred has the burden of proof on the waiver issue.  Id. at 132.

The Court finds that Hangsterfer's did not waive the work-product protection that applied to the February 2008 e-mails when L. Jones gave copies to plaintiff.  When L. Jones gave plaintiff the e-mails he was part of Hangsterfer's "management team" and was a "trusted employee."  Although Beth Jones may have been upset at plaintiff in February 2008, plaintiff was not an "adversary" of Hangsterfer's.  This is plainly evidenced by the fact that after February 2008 plaintiff was promoted to General Manager and he was not fired until August 2009.

Inadvertent Production

Plaintiff claims defendant waived its privilege when it produced on October 15, 2010, copies of privileged e-mails that were exchanged amongst defendant's management and its counsel from October 29, 2007 to November 21, 2008.  The Court agrees.

As to the attorney-client privilege, the privilege is waived when privileged information is disclosed to a person outside the attorney-client relationship. Westinghouse Elec. Corp., supra. The act of disclosing privileged information to a third-party indicates that the client did not intend to keep the communication secret. Love v. NJDYFS, 07-3661 (JEI/JS), 2010 WL 715357, at *2 (D.N.J. March 2, 2010). A disclosure to a third-party waives the privilege even if the third-party agrees not to disclose the information to anyone else. Id. The Court finds that defendant waived its attorney-client privilege regarding the February 2008 e-mails when it produced other privileged communications to plaintiff on October 15, 2010. Similarly, the Court finds that defendant waived its work-product protection by producing privileged documents to its adversary on October 15, 2010. See Maldonaldo, supra.

Defendant cites two reasons why waiver should not apply. First, defendant argues it inadvertently produced its privileged documents in October 2010 and therefore there was no waiver. See Fed. R. Evid. 502. Second, defendant argues waiver does not apply because the subject matter of the February 2008 e-mails is not "virtually identical" to the documents produced in October 2010.

In two recent opinions this Court discussed the concept of inadvertent waiver; these discussions are incorporated herein by reference. See U.S. v. Sensient Colors, Inc., No. 07-1275 (JHR/JS), 2009 WL 2905474 (D.N.J. Sept. 9, 2009); Peterson v. Bernardi, 262 F.R.D. 424 (D.N.J. 2009). When deciding whether a privilege is waived regarding inadvertently produced documents the elements in Fed. R. Evid. 502(b) must be satisfied: (1) the disclosure must be inadvertent; (2) the holder of the privilege or protection must have taken reasonable steps to prevent the disclosure, and; (3) the holder must promptly take reasonable steps to rectify the error, including (if applicable) following Fed. R. Civ. P. 26(b)(5)(B). The disclosing party has the burden to prove that the elements of FRE 502(b) have been met. Peterson, 262 F.R.D. at 427.

Defendant has not satisfied the elements of Rule 502(b). Defendant has not proffered any evidence regarding the reasonable steps it took to prevent the October 15, 2010 disclosure. In addition, defendant has not demonstrated that it took reasonable steps to rectify its error. In fact, to date defendant has not asked plaintiff to return the documents it allegedly "inadvertently produced." Defendant's defense that it did not intend to waive its privilege is unavailing. Defendant's subjective intent is not controlling. Id. at 429. By definition all inadvertent disclosures are unintentional. Id.

Having found that defendant's October 2010 production was not inadvertent, the Court finds that defendant waived the privilege

that applied to the February 2008 e-mails.  <u>V. Mane Fils S.A. v. International Flavors and Fragrances, Inc.</u>, 249 F.R.D. 152, 154 (D.N.J. 2008).  It is unfair to allow a client to assert a privilege and prevent disclose of alleged damaging documents but to allow the client to disclose other communications for self-serving purposes regarding the same subject matter.  <u>Id</u>.  Although the February 2008 e-mails and October 2010 documents do not concern the same meeting, the e-mails all concern the dispute with Fuchs regarding Fuchs' trade secret information.  Unlike a situation where an inadvertent disclosure occurs, defendant's waiver is not just limited to the documents produced in October 2010.  Defendant's waiver extends to the privileged February 2008 e-mails.  <u>Bensel v. Air Line Pilots Association</u>, 248 F.R.D. 177, 181 (D.N.J. 2008); <u>In re Kane v. Manufacturers Life Ins. Co.</u>, No. 08-4581, 2010 WL 2178837, at *4 (D.N.J. May 26, 2010).

<u>Conclusion</u>

　　　For all the foregoing reasons, the Court denies defendant's request for a protective order regarding the February 11 and 12, 2008 e-mails.  The Court finds that defendant did not waive the attorney-client privilege or work-product protection that applied to the documents when L. Jones gave copies to plaintiff.  However, the Court finds that defendant waived its privilege regarding the February 2008 e-mails because defendant produced privileged documents to plaintiff on October 15, 2010.  As a result, plaintiff may use and refer to the February 2008 e-mails during discovery.  The Court makes it clear, however, that this Letter Opinion does not address the use or admissibility of any e-mails at trial.

　　　　　　　　　　　　　　　　　Very truly yours,

　　　　　　　　　　　　　　　　　*s/ Joel Schneider*

　　　　　　　　　　　　　　　　　JOEL SCHNEIDER
　　　　　　　　　　　　　　　　　United States Magistrate Judge

JS:jk
cc:  Hon. Robert B. Kugler