NOT FOR PUBLICATION (Doc. Nos. 91, 96)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
ANDREW DUBLER, :
:
Plaintiff, :
: Civil No. 09-5144 (RBK/JS)
v. :
: **OPINION**
HANGSTERFER'S LABORATORIES, et al., :
:
Defendants. :
_____ :

**KUGLER**, United States District Judge:

Andrew Dubler ("Plaintiff") brings this matter against Hangsterfer's Laboratories, Hangsterfer's Laboratories Severance Plan, Ann Jones, and Beth Jones Sheehan ("Defendants"), claiming violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-2(e) (Count I), wrongful discharge (Count II), failure to pay severance and benefits in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002 (Count III), violation of the New Jersey Wage Payment Law ("WPL"), N.J.S.A. § 34:11-4.1 (Count IV), and breach of express or implied contract (Count V). Defendant has moved for summary judgment as to all counts in Plaintiff's Complaint. As explained below, the Court hereby grants in part and denies in part Defendant's motion for summary judgment.

**I. BACKGROUND**

Hangsterfer's Laboratories ("Hangsterfer's") is a third-generation family-owned business that manufactures and sells metalworking lubricants and related products and services. Def. Statement of Undisputed Facts ("SUF") ¶ 1. Defendant Ann Jones, the daughter of Hangsterfer's

1

founder, is the Chief Executive Officer and majority owner of Hangsterfer's.  Id. ¶ 2.  Three of Ann Jones's four children are presently employed as executives and are minority owners of Hangsterfer's.  Defendant Beth Jones Sheehan, Ann Jones's daughter, is a Vice President of Hangsterfer's.  Id. ¶ 3.  William Jones is also a Vice President, and Ed Jones is Chief Operating Officer.  Leslie Jones, the eldest of Ann Jones's children, was President of Hangsterfer's before retiring in late July 2009.  Id. ¶ 5.

Plaintiff was initially hired by Hangsterfer's as an at-will employee in 1996 as a Regional Sales Manager.  Compl. ¶ 7.  In December 2004, Plaintiff was promoted to Director of Sales.  Compl. ¶ 8.  In August 2008, Plaintiff was promoted again to General Manager.  Id. ¶ 9; Def. SUF ¶ 34 (citing Ex. M, Nolan Aff.).

The instant litigation arises out of Plaintiff's termination on August 3, 2009.  Id. ¶ 57.  On Sunday, August 2, 2009, Ed Jones, Defendant Beth Jones, and Defendant Ann Jones had breakfast together and discussed the direction and business state of Hangsterfer's.  Id. ¶ 50.  During the breakfast meeting, Ed Jones presented Defendant Ann Jones with an article recently published in a trade magazine, in which one of Hangsterfer's customers, Star Metal Fluids, promoted products of a Hangsterfer's competitor and failed to mention Hangsterfer's or Hangsterfer's products.  Id. ¶ 51.  Ed Jones also informed Ann Jones about concerns that Hangsterfer's customers expressed to him regarding their interactions with Plaintiff in the course of Hangsterfer's business.  Id. ¶ 52.

The following day, August 3, Defendant Ann Jones met with Plaintiff and informed Plaintiff that he was terminated.  Id. ¶ 58.  Defendant Ann Jones stated that the reasons for Plaintiff's termination were 1) that Hangsterfer's was struggling financially, 2) Defendant Ann Jones believed that Ed Jones could replace Plaintiff and bring a new strategic direction to

Hangsterfer's, and 3) Defendant Ann Jones wanted "[her] son to come back and work in the family business."  Id. ¶¶ 54-56 (citing Ann Jones's Dep. at 12:12-13:16, Ex. D, Nolan Aff.). During the week of August 3, 2009, Defendant Ann Jones hired Ed Jones to perform substantially the same duties and responsibilities as were performed by Plaintiff, at roughly the same salary as Plaintiff.  Id. ¶¶ 62-63.

On October 8, 2009, Plaintiff filed the Complaint in this instant case, bringing claims under NJ's CEPA and WPL, ERISA, wrongful termination, and breach of contract.

## II.  LEGAL STANDARD

### A. Motion for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony.  Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572, 575 (D.N.J. 2008).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial.  See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995).  The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material

3

fact. Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e).  "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment."  Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

### III. DISCUSSION

#### A. Plaintiff's CEPA Claim

Plaintiff alleges that his termination constituted retaliation in violation of CEPA, N.J.S.A. § 34:19-2(e).  CEPA was enacted to "protect employees who report illegal or unethical workplace activities."  Barratt v. Cushman & Wakefield of New Jersey, Inc., 144 N.J. 120, 127 (1996). CEPA claims are analyzed under the McDonnell-Douglas burden-shifting framework.  See Kolb v. Burns, 727 A.2d 525, 531 (N.J. App. Div. 1999).  Plaintiff must first establish a four-factor prima facie case: (1) he reasonably believed that his employer's conduct was violating either a law or regulation promulgated pursuant to law; (2) he performed a whistle-blowing activity described in N.J.S.A. § 34:19-3a, c(1), or c(2); (3) his employer took an adverse employment action against him; and (4) there is a causal connection between the whistle-blowing activity and the adverse employment action.  Id. at 530; Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 92 (3d Cir. 1999).  Where a plaintiff's alleged whistle-blowing addressed a clear mandate of public policy as described in N.J.S.A. 34:19-3a(c)(3), the plaintiff must first articulate the existence of a clear mandate of public policy which the employer's conduct violates.  Mehlman v. Mobil Oil Corp., 707 A.2d 1000, 1012 (N.J. 1998).

Once the plaintiff establishes these factors, "the burden of production is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate

4

nondiscriminatory reason for the adverse employment action." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 449 (2005). The burden of production then returns to the plaintiff to demonstrate that the proffered reasons were merely pretextual. Id. While the plaintiff need not provide direct evidence that his employer acted for discriminatory reasons, he must "point to sufficient evidence to support an inference that the employer did not act for its proffered nondiscriminatory reasons." Id. This "burden merges with the plaintiff's ultimate burden of persuading the court that she or he was subjected to intentional discrimination." Id. CEPA is remedial legislation, and therefore must be "construed liberally to effectuate its important social goals." Feldman v. Hunterdon Radiological Associates, 187 N.J. 228, 239 (2006) (citations omitted).

In the present matter, Defendant contends that (1) Plaintiff has failed to establish a causal connection between Plaintiff's alleged "whistle-blowing activity" and the adverse employment action, and therefore has not established the fourth prong of a prima facie case under the CEPA analysis; and (2) even if Plaintiff does establish his prima facie case, summary judgment is appropriate because Plaintiff cannot offer sufficient evidence that the reasons offered for his termination were a pretext for retaliation. Because the Court finds that Plaintiff has failed to establish a causal connection and that Plaintiff's evidence is insufficient to demonstrate pretext, the Court grants summary judgment to Defendant on Plaintiff's CEPA claim.

### 1. Plaintiff's Alleged Whistleblowing Activity

Plaintiff alleges that he reasonably believed that another employee at Hangsterfer's, Christopher Sheehan, had, in violation of New Jersey law, stolen trade secrets from his previous employer and used his knowledge of such trade secrets to formulate a new product for Hangsterfer's. Pl. br. at 3. Plaintiff argues that Mr. Sheehan, a high school graduate with no formal education in chemistry, took the position of Technical Director at Hangsterfer's soon after

5

leaving his position at a competitor company in the same industry.  Id.  Plaintiff alleges that shortly after taking charge of the lab at Hangsterfer's, Mr. Sheehan developed a brand new lubricant technology that had never been used by Hangsterfer's before.  Id.  Plaintiff claims that he stated to Leslie Jones, Hangsterfer's President, Patricia Brewer, Hangsterfer's Director of Human Resources, and Defendant Beth Jones Sheehan, Hangsterfer's Vice President, on or around June 2007, that Plaintiff believed that Mr. Sheehan had stolen trade secrets from his previous employer and had used them to benefit Hangsterfer's in violation of New Jersey law. Id. at 3-5.  Plaintiff further alleges that he was terminated in retaliation for making these statements.

The Court finds that these allegations are sufficient to establish the first three prongs of Plaintiff's prima facie case under CEPA.  The fourth prong of a necessary primary case under CEPA, namely whether a causal connection has been established, is discussed in the following subsection.

### 2. Prima Facie Case - Causal Connection

Defendant argues that Plaintiff's CEPA claim must be dismissed because Plaintiff has failed to show a causal connection between Plaintiff's complaint and his termination.  Having established that he was subjected to a retaliatory action under CEPA (termination), Plaintiff must provide some evidence of a causal connection between the action and the alleged "whistle-blowing."  Kolb, 727 A.2d at 531.  "A CEPA plaintiff can prove causation by presenting either direct evidence of retaliation or circumstantial evidence that justifies an inference of retaliation." Zaffuto, 130 Fed. Appx. at 569.  The Court finds that Plaintiff has failed to demonstrate the requisite causal connection.

The amount of elapsed time between Plaintiff's alleged whistle-blowing activity and the employer's adverse action under CEPA does not permit an inference of causation in the prima facie stage. Plaintiff's termination was not one of those "rare cases" where the decision to discharge takes place so soon after the discovery of the participation in protected conduct that the inference of discrimination is impossible to ignore. Bowles v. City of Camden, 993 F. Supp. 225, 264 (1998); see also Schlinchtig, 271 F. Supp. 2d at 612 ("[T]he temporal proximity between an employee's termination and his protected activity may permit an inference of causation where the relatively short interval between the two is 'unusually suggestive' of retaliation."). Rather, more than two years passed between the time Plaintiff made a protected complaint under CEPA and the time Plaintiff was ultimately terminated. The evidence shows that, far from being retaliated against, Plaintiff was promoted to the position of General Manager at a time subsequent to making his statements regarding Mr. Sheehan to Leslie Jones, Beth Jones Sheehan, and Patricia Brewer. Moreover, Plaintiff admits that he never expressed his concerns about the proprietary information to Mr. Sheehan or to any chemist at Hangsterfer's at any time. Def. SUF ¶¶ 29-30. Therefore, Plaintiff has failed to establish a prima facie CEPA violation, and Plaintiff's CEPA claim must be dismissed.

### 3. Whether Defendants' Proferred Reasons for Termination were a Pretext

The Court finds that even if Plaintiff were able to establish a CEPA violation, Plaintiff has failed to raise a reasonable inference that Defendants' proferred reasons for his termination were pretextual. In this case, "in the context of the record as a whole, the chronology of events does not provide substantial support for [Plaintiff's] position." Thomas v. Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) ("the timing of the alleged retaliatory action must be unusually

suggestive of retaliatory motive before a causal link will be inferred"). The evidence shows rather that Plaintiff was likely terminated for legitimate business reasons, such as financial hardship for Hangsterfer's and dissatisfaction with Plaintiff's handling of the company as General Manager. See Ann Jones's Dep. at 12:12-13:16, Ex. D, Nolan Aff. Plaintiff's protestation that his termination more than two years after making a protected complaint was a calculated instance of retaliation fails to demonstrate that Defendants' proferred reasons for termination were pretextual.

### B. Plaintiff's Pierce Claim for Wrongful Termination

Defendant next argues that Plaintiff's claim for wrongful discharge under Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980) should be dismissed because Plaintiff waived his right to bring such a claim by instituting his CEPA claim. The Court notes that the CEPA Statute, N.J.S.A. § 34:19-8, states that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available . . . under the common law." Consistent with the CEPA statute, New Jersey courts have interpreted "the filing of a CEPA complaint to be an election of remedies." Tartaglia v. UBS Paine Webber, Inc., 197 N.J. 81, 105 (2008).

The Court finds that Plaintiff has instituted a CEPA claim. Therefore, pursuant to N.J.S.A. § 34:19-8, Plaintiff's Pierce claim must be dismissed.

### C. Plaintiff's ERISA Claim

Defendant argues that Plaintiff's ERISA claim should be dismissed because Hangsterfer's has no written severance policy and because Hangsterfer's has no consistent past practice regarding who receives severance or the amount of severance paid to employees. Def. br. at 15. Plaintiff argues that the lack of a written severance policy is not fatal to Plaintiff's

claim, because the record demonstrates the existence of a reasonably clear policy or practice of paying employees severance benefits according to a fixed schedule. Pl. br. at 31.

Where no written severance policy exists for a company, the Court must consider any written representations to employees regarding their severance benefits. See Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees, 974 F.2d 391, 395 (3d Cir. 1992). "If a company's properly published written representations do not clearly limit benefits, the district court should consider all other evidence that would indicate the presence or absence of an informal employee benefit plan." Id. at 400.

"In determining whether a plan, fund, or program (pursuant to a writing or not) is a reality, a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." Id. at 399 (quoting Donovan v. Dillingham, 688 F.2d 1367 (11th Cir. 1983)). The Third Circuit clarified that "[f]or example, internal or distributed documents, oral representations, existence of a fund or account to pay benefits, actual payment of benefits, a deliberate failure to correct known perceptions of a plan's existence, the reasonable understanding of employees, and the intentions of the putative sponsor would all be relevant to determine whether a plan existed." Id.

Plaintiff notes that the following employees had not been offered severance payments upon termination:

> Shawn Dunn (offered severance but refused to sign associated release); Ed Jones (terminated for cause, also eventually settled lawsuit with the company which included a payment); Jones Sheehan (first tenure, not at a management level at the time, terminated for cause); Chris Sheehan (end of first tenure: terminated for cause); Jodi Reed (not offered severance because her layoff was supposed to be temporary), Rich Romano (same), and Cheryl Villanova (same).

Pl. br. at 32-33 (citing Def. Interrogatory Resp., Ex. X, Nolan Decl; Dubler Decl. at ¶¶ 11-16). Plaintiff notes that other than Ed Jones, none of these employees were management level at the time of their termination, and none of them other than Ed and Beth Jones had tenure with the company as long as Mr. Dubler's 13 years.  Pl. br. at 33.

Plaintiff first argues that Hangsterfer's unwritten severance policy is reasonably clear as to the identity of the employees that would reasonably expect severance payments.  Plaintiff argues that Hangsterfer's pattern of practice demonstrates that management-level employees receive severance benefits unless the employee was terminated for cause, the employee refused to accept severance payments, or the employee's layoff was supposed to be temporary.

Next, Plaintiff argues that a Hangsterfer's employee could reasonably determine roughly how many weeks of severance pay they would receive upon termination (assuming that the employee is within the category of employees expected to receive severance payments).  Plaintiff provides a list of the following terminated employees who received severance payments:

> Cathy Fischer (7 years with the company, 8 weeks of severance); George Goebel (55 years with the company, 25 weeks severance); Colleen Helm (3 years with the company, 3 weeks severance); Robert Hess (9+ years with the company, 10 weeks severance); Larry Jankowski (14 years with the company, 24 weeks severance); Tom McClure (3 months with the company, 1 week severance); Frank Murray (6 months with the company, 2 weeks severance); Tina Seitzinger (5+ years with the company, 4 weeks severance); Chris Sheehan (2 tenures with the company totaling 8 years, 12 weeks severance); John Wiley (10 years with the company, 10 weeks severance).

Def. Interrogatory Resp., Ex. X, Nolan Decl., at 15.

Plaintiff claims that Hangsterfer's business practice is to provide terminated employees with a severance payment of roughly one week of severance pay per year worked for the company.  Defendants argue that Hangsterfer's practice of paying severance payments over the past ten years demonstrates that there is a large variance between the severance payments offered

to terminated employees.  Def. br. at 15.  Defendants argue that only two terminated employees received severance payments equal to one week of pay per year worked, and that several employees received significantly more or less severance payments.  Id.

The Court finds that while a reasonable employee may not have known exactly how many weeks of severance pay that they would have been entitled to upon termination, the standard for raising an ERISA claim for severance payments merely requires that a reasonable employee be able to figure out the "intended benefits, beneficiaries, source of financing, and procedures for receiving benefits."  Henglein, 974 F.2d at 399.  Based on the evidence in the record, the Court finds that Plaintiff has raised a genuine issue of fact as to whether a reasonable employee could have ascertained that management-level employees at Hangsterfer's could generally expect to receive a severance payment upon termination, if they were not terminated for cause.  Here, Plaintiff has not been offered any severance payment since the time of his termination.  Therefore, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's ERISA claim.

### D. Plaintiff's WPL Claim

Defendant next moves for summary judgment as to Plaintiff's WPL claim.  Defendant argues that the relief sought by Plaintiff, namely severance benefits and a year-end bonus payment, does not fall within the WPL's definition of "wages."  N.J.S.A. 34:11-4.1 explicitly states that the term "wages" "exclud[es] any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto."  Plaintiff does not offer any argument to rebut Defendant's argument as to the WPL claim.  Therefore, based on the definition of "wages" in the WPL, the Court grants Defendant summary judgment as to Plaintiff's WPL claim.

### E. Plaintiff's Breach of Contract Claims

Defendant finally moves for summary judgment as to Plaintiff's claims for breach of express or implied contract. Defendant argues that Plaintiff has not identified any express or implied contract entitling him to severance pay or a bonus.

Under New Jersey law, a contract is formed upon offer and acceptance. The contract must be sufficiently definite that "the performance to be rendered by each party can be ascertained with reasonable certainty." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). Plaintiff fails to identify the existence of any written contract.

However, as explained above with respect to Plaintiff's reasonable expectations of an ERISA severance payment, see discussion supra Part III.C, Plaintiff has identified sufficient evidence to permit a finder to fact to determine that some form of a severance program existed. Thus, Plaintiff has raised a genuine issue of material fact with respect to Plaintiff's claim for breach of contract for severance payments due.

Plaintiff further seeks an incentive bonus that he claims was promised to be paid to him at a deferred date. Plaintiff claims that Defendant Ann Jones stated, around the end of 2008, that Plaintiff was entitled to an incentive bonus of $55,000 for the year 2008. Pl. br. at 34; Pl. Counterstatement of Facts ¶ 98. Plaintiff claims that Defendant Ann Jones further asked him to defer his incentive bonus for 2008 to a later date, in view of the Company's financial difficulties at that time. Id. Plaintiff argues that Defendant Ann Jones's offer to pay an incentive bonus to Plaintiff in return for Plaintiff's work at Hangsterfer's, and Plaintiff's acceptance of that offer, constitutes an enforceable contract. Plaintiff now seeks payment of this incentive bonus.

The Court finds that Plaintiff has raised a genuine issue of material fact as to breach of contract for incentive payments due.  Therefore, summary judgment for Defendant as to this issue must be denied.

## IV.     MOTION TO SEAL

Plaintiff moves to seal Plaintiff's Opposition Brief to Defendants' Motion for Summary Judgment and the documents and exhibits attached herewith.  Pursuant to the Court's Discovery Confidentiality Order (Dkt. No. 13), Defendants have designated portions of the record that contain what Defendants regard as confidential commercial or business information within the meaning of Fed. R. Civ. P. 26(c).  Plaintiff declares that he believes that his Opposition Brief and attached materials contain information designated by Defendant as confidential.

Public access to court filings is not absolute, and may be overcome by a sufficient showing by the party seeking confidentiality.  See Nixon v. Warner Communications, Inc., 435 U.S. 589, 603 (1978).  The Court finds that Plaintiff's designated materials, Exhibits A through I and L, consist of deposition transcripts and documents marked confidential and/or highly confidential when produced by defendants in discovery, which defendants claim is commercial or business information within the meaning of Fed. R. Civ. P. 26(c).  Due to the nature of the materials described herein and defendants' designation thereof, no less restrictive alternative to filing under seal is available.

Accordingly, the Court grants Plaintiff's Motion to Seal.

## V.     CONCLUSION

For the reasons detailed above, the Court denies Defendants' motion for summary judgment with respect to Plaintiff's claims for severance payments pursuant to ERISA (Count III) and breach of contract (Count V).  The Court grants Defendants' motion for summary judgment

with respect to all other claims (Counts I, II, and IV).  The Court grants Plaintiff's motion to seal.

An appropriate order shall enter today.



Dated:  3/5/12                                              /s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge